EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: Inés A. Aponte Duchesne | 2014 TSPR 85 191 DPR ____ |

Número del Caso: CP-2008-14

Fecha: 9 de julio de 2014

Abogado de la Parte Querellada:

      Lcdo. Efraín Guzmán Mollet

Oficina de la Procuradora General:

      Lcda. Irene Soroeta Kodesh
      Procuradora General

      Lcda. Zaira Girón Anadón
      Subprocuradora General

      Lcda. Minnie H. Rodríguez López
      Procuradora General Auxiliar

Materia: Conducta Profesional – Censura enérgica por violación a los Cánones 21 y 38 de Ética Profesional (representación de intereses encontrados)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Inés A. Aponte Duchesne                    CP-2008-14

*PER CURIAM*

En San Juan, Puerto Rico, a 9 de julio de 2014.

En este caso, debemos evaluar la conducta profesional de la Lcda. Inés A. Aponte Duchesne relacionada con el sonado asesinato del empresario canadiense Adam Joel Anhang en el Viejo San Juan.

I

La Lcda. Inés A. Aponte Duchesne fue admitida al ejercicio de la abogacía el 17 de enero de 1995 y a la notaría el 10 de noviembre de 2005. El 2 de noviembre de 2005, el Sr. Abraham P. Anhang presentó una queja ante este Tribunal contra el Lcdo. Jorge Gordon Menéndez por violación al Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 21. En resumen, la queja relató unos hechos en donde se

encuentran representados simultáneamente por el mismo abogado un acusado, una de las alegadas víctimas y la hermana de la alegada víctima.

El señor Anhang expresó ser el padre del difunto Adam Joel Anhang, empresario canadiense asesinado el 23 de septiembre de 2005 en San Juan, Puerto Rico. Al momento de su muerte, estaba acompañado por su ahora viuda, Sra. Áurea B. Vázquez Rijos. Según se detalló en la queja, la señora Áurea Vázquez Rijos, quien estaba representada en ese entonces por el licenciado Gordon Menéndez, rehusó ser entrevistada por las autoridades en varias ocasiones con relación al asesinato de su esposo. El licenciado Gordon Menéndez recibió en más de una ocasión las citaciones que se le cursaron a la viuda para que testificara sobre lo ocurrido y presentó mociones para excusar su comparecencia. Paralelamente, el licenciado Gordon Menéndez asumió la representación legal del acusado del asesinato del señor Anhang: el joven Jonathan Román Rivera. Específicamente, lo representó durante la lectura de acusación y la vista preliminar.

Por otro lado, el 31 de octubre de 2005, la Sra. Marcia Vázquez Rijos, hermana de la viuda, compareció al Centro Metropolitano de Investigaciones y Denuncias de San Juan para ser entrevistada como parte de la investigación en curso. La señora Marcia Vázquez Rijos estuvo representada por la licenciada Aponte Duchesne, quien en ese momento trabajaba junto al licenciado Gordon Menéndez. La licenciada

también estaba asistiendo con la representación del señor Román Rivera.

Por estos hechos, el 24 de febrero de 2006, el Ministerio Público presentó una Moción de Descalificación contra el licenciado Gordon Menéndez y la licenciada Aponte Duchesne en el caso Pueblo v. Jonathan Román Rivera, VP2005-6533-6534.[1] Realizados los trámites de rigor, el 2 de mayo de 2006, el foro primario emitió una Resolución mediante la cual descalificó a ambos abogados de la representación legal del señor Román Rivera por conflicto de intereses en contravención al Canon 21 del Código de Ética Profesional, *supra*.

Al advenir final y firme la resolución del Tribunal de Primera Instancia, el Procurador General rindió su Informe en el procedimiento disciplinario que se había iniciado en contra del licenciado Gordon Menéndez tras la presentación de la queja por parte del padre del difunto. En este señaló que: "[l]os hechos no controvertidos y demostrados en el proceso establecen que el licenciado Gordon Menéndez representaba al mismo tiempo, y en relación a los mismos hechos, al acusado, a la viuda del occiso, quién presenció los hechos y fue herida en el acto, y a la hermana de la

---

[1] El señor Román Rivera fue liberado tras estar varios meses encarcelado injustamente. Luego de recibir una confesión, un gran jurado federal emitió acusaciones contra el Sr. Alex Pabón Colón, las señoras Áurea y Marcia Vázquez Rijos y el Sr. José Ferrer Sosa por conspirar para asesinar al señor Anhang Uster. La señora Áurea Vázquez Rijos fue arrestada en España y actualmente hay un proceso de extradición a solicitud de la fiscalía federal. Por estos hechos, el señor Pabón Colón se declaró culpable en la Corte Federal para el Distrito de Puerto Rico.

viuda". Añadió que: "encontramos que el licenciado Gordon Menéndez pudo haber [sic] incurrió en violación de los Cánones 21 y 38 de Ética Profesional, por lo que respetuosamente recomendamos la continuación del procedimiento disciplinario que se presenta en este Informe". El Informe también señalaba que la licenciada Aponte Duchesne incurrió en la misma conducta violatoria de los Cánones 21 y 38 de Ética Profesional, *supra*. Por esta razón, ordenamos que se le cursara copia del Informe a la licenciada Aponte Duchesne y se le concedió un término para que reaccionara al mismo.

Tras varios incidentes procesales, entre ellos, una solicitud de recusación de la Oficina del Procurador General, ordenamos que se presentara la querella, lo cual se hizo el 1 de agosto de 2008. En la querella, el Procurador General relató los hechos antes reseñados y formuló dos cargos contra la licenciada Aponte Duchesne por violación al Canon 21 y al Canon 38 del Código de Ética Profesional, *supra.* El primero, por representar al mismo tiempo al acusado, a la viuda del occiso y a la hermana de esta. El segundo, por incurrir en apariencia de conducta impropia que atentó contra su deber de exaltar el honor y la dignidad de la profesión legal.

La licenciada Aponte Duchesne contestó la querella, negó haber incurrido en las violaciones éticas señaladas y solicitó la desestimación con perjuicio de la acción por las siguientes razones: (1) falta de legitimación activa del

señor Anhang; (2) que lo imputado por el señor Anhang fue atendido y resuelto por el Tribunal de Primera Instancia en el caso de Pueblo v. Jonathan Román Rivera; (3) que procesarla disciplinariamente sacaría de proporción el poder inherente del Tribunal Supremo; (4) que nunca representó a la señora Áurea Vázquez Rijos; y (5) que tan pronto detectó la posibilidad de un conflicto de intereses, desistió de representar a la señora Marcia Vázquez Rijos.

Tras un análisis de la querella y de la contestación, nombramos a la Hon. Ygrí Rivera de Martínez como Comisionada Especial para que recibiera la prueba de las partes y rindiera el informe correspondiente. Posteriormente, se celebraron varias vistas y se ordenó al Procurador General a enmendar el primer cargo de la querella para eliminar la alegación respecto a que la querellada había representado a la señora Áurea Vázquez Rijos. Así lo hizo.

El 31 de octubre de 2011, la Comisionada rindió su informe. De éste se desprenden las siguientes determinaciones de hechos:

1. La Lcda. Inés Angélica Aponte Duchesne fue admitida al ejercicio de la abogacía el 17 de enero de 1995 y al ejercicio de la notaría el 10 de noviembre de 2005. El número de Colegiada es 12,532.

2. La licenciada Aponte Duchesne nunca antes había sido objeto de un proceso disciplinario.

3. Mediante Resolución de fecha 1ro de agosto de 2008, este Honorable Tribunal instruyó a la entonces Procuradora General, Irene S. Soroeta Kodesh, a que presentara la querella correspondiente contra la licenciada Aponte Duchesne, luego de haber evaluado el Informe de la Procuradora General presentado para la queja AB-05-267 y la contestación al mismo por parte de la querellada, así como, diversos escritos de una

y otra parte, entre ellos, la solicitud de la querellada de que se desestimara el caso, solicitud que fue denegada.

4. La mencionada queja fue presentada el 2 de noviembre de 2005 por el Sr. Abraham P. Anhang, como resultado de unos hechos ocurridos en horas de la madrugada del 23 de septiembre de 2005, en los cuales resultó asesinado el hijo del Sr. Anhang, Adam Joel Anhang Uster.

5. En la queja, el señor Anhang no mencionó a la licenciada Aponte Duchesne.

6. De la queja surge que al momento de la muerte del señor Adam Joel Anhang Uster, este se encontraba acompañado de su esposa, la Sra. Áurea Beatriz Vázquez Rijos, también conocida como: Áurea Vázquez Rijos y/o Áurea Dominicci, quien, de acuerdo con lo expuesto en la misma, se había negado a ser entrevistada por los agentes de la Policía de Puerto Rico y a cooperar en la investigación de los hechos que culminaron en la muerte de su esposo e hijo del quejoso.

7. Las autoridades arrestaron al Sr. Jonathan Román Rivera por los hechos relacionados con la muerte de Adam Joel Anhang, siendo acusado de asesinato en primer grado y delitos bajo la Ley de Armas.

8. El 13 de octubre de 2005, la licenciada Aponte Duchesne compareció a representar a Jonathan Román Rivera tanto en el Centro Metropolitano de Denuncias de San Juan como en la vista de determinación de causa al amparo de la Regla 6 de Procedimiento Criminal. En esa ocasión, se determinó causa para arresto contra Jonathan Román Rivera por la supuesta violación a los Artículos 106 del Código Penal y 5.05 de la Ley de Armas.

9. El 31 de octubre de 2005, la licenciada Aponte Duchesne compareció representando a la Sra. Marcia Vázquez Rijos al Centro Metropolitano de Denuncias como resultado de una citación que recibiera la señora Vázquez Rijos.

10. Ese día la fiscal Sonia Otero Martínez de Andino trajo a la atención de la licenciada Aponte Duchesne que su representada figuraba como una de las personas que había identificado al occiso Adam Joel Anhang, por lo que siendo una testigo potencial se negó a entrevistarla en presencia de ella.

11. La Sra. Marcia Vázquez Rijos es hermana de la viuda del occiso, Áurea Vázquez Rijos.

12. La licenciada Aponte Duchesne indicó desconocer el hecho de la identificación del occiso por parte de la señora Vázquez Rijos. Corroborado el hecho con la potencial testigo, decidió no representarla legalmente.

13. Posteriormente, el Ministerio Público solicitó la descalificación de la licenciada Aponte Duchesne en el caso <u>Pueblo v. Jonathan Román Rivera</u>, V.P. 05-6533-6534 (608).

14. En la vista de descalificación el foro de instancia escuchó el testimonio de varios testigos, entre ellos el de la Fiscal Sonia Otero Martínez de Andino, quien declaró sobre el incidente en el Centro Metropolitano de Denuncias de San Juan.

15. Luego de escuchar amplia prueba, dicho foro de Primera Instancia determinó mediante Resolución emitida el 2 de mayo de 2006, que en el caso existía una claro conflicto de interés, en contravención al Canon 21 de Ética Profesional, por lo que declaró con lugar la solicitud de descalificación.

16. El 1ro de agosto de 2008, este Honorable Tribunal ordenó a la Procuradora General la presentación de la querella que nos ocupa.

17. Se estipuló por las partes, durante el proceso disciplinario, el expediente criminal del caso <u>Pueblo v. Jonathan Román Rivera</u>, KVI 2006 G 0042; KLA 2006 G0225 del Tribunal de Primera Instancia, Sala de San Juan, sobre: Art. 106 CP y Art. 505 LA.

18. Se estipuló, además, el hecho de que fue presentada una demanda por el Sr. Jonathan Román Rivera, con el número Civil 0-19-29 GA GJA ante el foro federal y otra ante el foro local con el núm. de caso KPD 2009-1260.

19. Se estipuló la documentación contenida en el expediente AB-05-267.

20. La controversia consiste en determinar, si a la luz de los hechos se probó o no la querella que imputa cargos bajos los Cánones 21 y 38 de Ética Profesional, 4 L.P.R.A. Ap. IX, C- 21 y 4 L.P.R.A. Ap. IX, C. 38.

Luego de evaluar la prueba, la Comisionada Especial entendió que la licenciada Aponte Duchesne incurrió en conducta violatoria de los Cánones 21 y 38 del Código de Ética Profesional, *supra.* El 21 de diciembre de 2011, la querellada presentó una Réplica al Informe de la Comisionada Especial. En resumen, reafirmó que no incurrió en conflicto de interés y que la descalificación impuesta por el Tribunal de Primera Instancia era la única medida que procedía en

derecho. Además, adujo que no se le puede disciplinar por asociación, haciendo referencia al procedimiento disciplinario en contra del licenciado Gordon Menéndez.[2]

II

**A. Canon 21 del Código de Ética Profesional, *supra*.**

El Canon 21 del Código de Ética Profesional, *supra*, busca evitar que los abogados y abogadas incurran en la representación de intereses encontrados. <u>In re Reyes Coreano</u>, 2014 TSPR 51, 191 DPR ___ (2014). Véase además, <u>In re Pérez Marrero</u>, 185 DPR 449, 457 (2012); <u>In re Gordon Menéndez</u>, 183 DPR 628, 638 (2011). Esto, pues se tiene que preservar la lealtad del abogado o abogada hacia su cliente. <u>In re Reyes Coreano</u>, *supra*.

El Canon establece, en lo pertinente, que:

[e]l abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.

No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos

---

[2] A raíz de la queja presentada en contra del licenciado Gordon Menéndez por estos mismos hechos, lo suspendimos por un término de seis meses. Véase, <u>In re Gordon Menéndez</u>, 183 DPR 628 (2011).

o confidencias y la de adoptar medidas adecuadas
para evitar su divulgación. Un abogado no debe
aceptar la representación de un cliente en
asuntos que puedan afectar adversamente cualquier
interés de otro cliente anterior ni servir como
árbitro, especialmente cuando el cliente anterior
le ha hecho confidencias que puedan afectar a uno
u otro cliente, aun cuando ambos clientes así lo
aprueban. Será altamente impropio de un abogado
el utilizar las confidencias o secretos de un
cliente en perjuicio de éste. *Supra*.

Según se desprende de una lectura del Canon, el deber de lealtad consiste en que el abogado o abogada no revele confidencias que el cliente le haya comunicado. In re Pérez Marrero, *supra*, en la pág. 457. Por esta razón, se prohíbe que el abogado o abogada incurra en representaciones simultáneas o sucesivas adversas. Íd. Es decir, este Canon no permite que un miembro de la profesión represente a un cliente en una controversia que está sustancialmente relacionada con la de otro cliente actual o anterior, cuando los intereses de ambos son adversos. Íd., en las págs. 457-458. Sobre este asunto hemos expresado que: "el abogado debe cuidar que sus actuaciones no den margen a la más leve sospecha de que promueve o defiende intereses encontrados con los de su cliente". In re Reyes Coreano, *supra*. Véase además, In re Pérez Marrero, *supra*, en la pág. 458; In re Monge García, 173 DPR 379, 384 (2008).

De acuerdo al Canon 21, *supra*, hay tres situaciones que el profesional del derecho debe evitar: (1) aceptar la representación legal cuando a su juicio ésta pueda verse afectada por sus expectativas o intereses personales; (2) aceptar la representación legal simultánea de dos clientes

con intereses contrapuestos; y (3) aceptar la representación legal de un cliente en asuntos que puedan afectar cualquier interés de un cliente anterior. In re Gordon Menéndez, supra, en las págs. 639-642; In re Torres Viera, 170 DPR 306, 311 (2007).

La primera situación ocurre cuando un abogado o abogada asume la representación legal de un cliente a sabiendas de que su juicio profesional puede verse afectado por sus intereses personales. In re Gordon Menéndez, supra, en la pág. 641. El segundo escenario es la representación simultánea de clientes. Íd., en las págs. 639-640. Esto ocurre cuando en beneficio de un cliente, el abogado o abogada tiene que defender aquello a lo cual debe oponerse en cumplimiento de sus obligaciones hacia otro cliente. Íd. Véase además, In re Torres Viera, supra, en la pág. 311.

La última situación contemplada por este Canon como configurativo de un conflicto de intereses es la representación sucesiva adversa de clientes. In re Gordon Menéndez, supra, en las págs. 639-641. Esto es, cuando "un abogado acepta la representación legal de una persona, cuyos intereses en el caso actual podrían ser conflictivos con los de un cliente pasado del abogado, y por lo tanto, éste se coloca en una posición de desventaja frente a aquél". S. Steidel Figueroa, *Ética y responsabilidad disciplinaria del abogado*, Estados Unidos, Pubs. JTS, 2010, en la pág. 133.

Para determinar si un miembro de la profesión legal incurrió en la representación sucesiva de intereses

encontrados de clientes, se debe analizar si existe una relación sustancial entre los asuntos que maneja el abogado o abogada con dos clientes actuales o entre los que manejó con un cliente pasado y los que maneja con un cliente actual. In re Gordon Menéndez, *supra*, en la pág. 640. La relación sustancial debe ser más que una mera coincidencia de los sujetos involucrados o una mera coincidencia temática entre el asunto general de una representación actual y una pasada. Steidel Figueroa, *op. cit.*, en la pág. 136. Véase además, In re Monge García, *supra*, en la pág. 384.

Con relación a la representación simultánea adversa y la representación sucesiva adversa, no se requiere probar una violación al principio de confidencialidad; sólo se requiere una relación previa de abogado y cliente, y que tal representación resulte adversa y esté relacionada sustancialmente con la anterior. In re Gordon Menéndez, *supra*, en la pág. 641; In re Carreras Rovira y Suárez Zayas, 115 DPR 778, 791-792 (1984). Además, la inexistencia de una relación abogado-cliente dual no exime a un miembro de la profesión de una imputación de conducta impropia. In re Gordon Menéndez, *supra*, en la pág. 641. Véase además, Steidel Figueroa, *op. cit.*, en las págs. 136-137.

No obstante, para que se activen las prohibiciones sobre representación simultánea adversa o representación sucesiva adversa, es necesaria la existencia de una relación abogado-cliente. In re Soto Cardona, 143 DPR 50, 56 (1997).

Finalmente, cabe señalar que para analizar la conducta de un abogado o abogada en cualquiera de las situaciones antes indicadas, es indispensable tener en mente que la prohibición del Canon 21 del Código de Ética Profesional, *supra*, se extiende no sólo a la existencia real del conflicto, sino también a conflictos aparentes, pero que llevan consigo la semilla de un posible o potencial conflicto futuro. In re Ortiz Martínez, 161 DPR 572, 581 (2004).

**B. Canon 38 del Código de Ética Profesional, *supra*.**

El Canon 38 del Código de Ética Profesional, *supra*, enfatiza los valores principales que deben prevalecer en el ejercicio de la profesión legal: la dignidad y el honor. In re Reyes Coreano, *supra*.
https://a.next.westlaw.com/Document/I17f0d33dcbe311e3b86bd602cb8781fa/View/FullText.html?navigationPath=Search%2Fv3%2Fsearch%2Fresults%2Fnavigation%2Fi0ad7052600000146159bedeb29a08e26%3FNav%3DCASE%26fragmentIdentifier%3DI17f0d33dcbe311e3b86bd602cb8781fa%26startIndex%3D1%26contextData%3D%2528sc.Search%2529%26transitionType%3DSearchItem&listSource=Search&listPageSource=2b9d0b96dcd5a99c8af90b90c2ace957&list=CASE&rank=1&grading=na&sessionScopeId=0dd02cc4a7d46663696e1c367dc75e43&originationContext=Search%20Result&transitionType=SearchItem&contextData=%28sc.Search%29-co_footnote_FN_F03939_2033251822 En particular, el Canon 38, *supra*, dispone, en lo pertinente, que:

> [e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. […]
>
> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo

abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.

Consiguientemente, un abogado o abogada que no se conduce digna y honorablemente viola el Canon 38, *supra*. In re Falcón López, 2013 TSPR 123, 189 DPR ___ (2013). Incluso, los miembros de la profesión legal tienen la obligación de evitar la conducta impropia en su vida profesional y personal, tanto en la realidad como en la apariencia. In re Falcón López, *supra*; In re Santiago Concepción, 2013 TSPR 93, 189 DPR ___ (2013). De lo contrario, podrían enfrentar la suspensión del ejercicio de la profesión. In re Falcón López, *supra.*

Por último, es menester señalar que en In re Torres Viera, *supra*, en la pág. 312, expusimos que cuando un letrado o letrada asume una representación simultánea adversa que implica un real o potencial conflicto de intereses entre dos de sus representaciones legales, se incurre en conducta violatoria de los Cánones 21 y 38 del Código de Ética Profesional, *supra.* Véase además, In re Morell, Alcover, 158 DPR 791, 811 (2003).

III

Luego de examinar con detenimiento el expediente del caso ante nuestra consideración, es forzoso concluir que la licenciada Aponte Duchesne violó los Cánones 21 y 38 del Código de Ética Profesional, *supra*, al representar simultáneamente al señor Román Rivera y a la señora Marcia Vázquez Rijos. La representación legal de un familiar

cercano, en este caso la hermana, de una víctima del delito y también la del alegado victimario promueve precisamente lo que los mencionados cánones buscan evitar.

El 13 de octubre de 2005, la licenciada Aponte Duchesne compareció a representar al acusado Román Rivera tanto en el Centro Metropolitano de Investigaciones y Denuncias de San Juan, como en la vista de determinación de causa al amparo de la Regla 6 de Procedimiento Criminal, 34 LPRA Ap. II, R. 6. Luego, el 31 de octubre de 2005, la letrada compareció representando a la señora Marcia Vázquez Rijos al Centro Metropolitano de Investigaciones y Denuncias como resultado de una citación que ésta última recibió. Esto representa una clara violación al Canon 21 del Código de Ética Profesional, *supra*, "pues es sabido que los intereses de las víctimas de unos actos delictivos comúnmente se hallan encontrados con los intereses del imputado de esos actos". In re Gordon Menéndez, *supra*, en la pág. 644. Naturalmente, habrá situaciones en las que los intereses de un familiar de la víctima no necesariamente estén alineados con los de la víctima y encontrados con los del imputado. No obstante, en este caso, los intereses de la señora Marcia Vázquez Rijos, como hermana de la víctima sí eran contrarios a los del señor Román Rivera, el acusado en aquel entonces. La abogada debió reconocer que con la representación antagónica que realizaba, ocasionaría un conflicto de intereses y trastocaría la confianza de todas las partes involucradas en el litigio. Por ello, también actuó en claro menosprecio de

lo que ordena el Canon 38 del Código de Ética Profesional, *supra.*

Por todo lo anterior, concluimos que la licenciada Aponte Duchesne violó los Cánones 21 y 38 del Código de Ética Profesional, *supra*, al representar simultáneamente a la señora Marcia Vázquez Rijos y al señor Román Rivera.

IV

Resta determinar la sanción que le impondremos a la letrada. Para esto, debemos tomar en consideración su reputación en la comunidad, su historial previo, si es su primera falta, si ninguna parte se ha visto perjudicada, si se trata de conducta aislada, el ánimo de lucro que medió en su actuación, si hubo resarcimiento al cliente y cualesquiera otras consideraciones, ya sean atenuantes o agravantes, que medien a tenor con los hechos. In re Hernández González, 188 DPR 721, 729 (2013); In re Quiñones Ayala, 165 DPR 138 (2005).

El Informe de la Comisionada Especial señala varias circunstancias atenuantes que pesan a favor de la licenciada Aponte Duchesne, entre ellas, que: (1) la querellada nunca ha sido objeto de otras querellas disciplinarias; (2) no hay prueba de que la actuación haya causado daño a las otras partes; (3) la querellada goza de buena reputación en la comunidad; (4) no hay prueba de que su motivación haya sido el lucro indebido o cualquier otro propósito que no fuera

lícito, y (5) no se trata de un patrón de conducta establecido o de un acto intencional, sino de una concepción errónea en un caso aislado. Añadimos que, enfrentada con que la señora Marcia Vázquez Rijos era una potencial testigo en el caso en contra del señor Román Rivera, la licenciada decidió no continuar con la representación legal.

Considerado todo lo anterior, censuramos enérgicamente a la Lcda. Inés Aponte Duchesne. Se le advierte a la licenciada que cualquier transgresión futura a las normas mínimas de conducta que impone el Código de Ética Profesional conllevará una sanción disciplinaria más severa.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Inés A. Aponte Duchesne                    CP-2008-14


SENTENCIA

En San Juan, Puerto Rico, a 9 de julio de 2014.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, censuramos enérgicamente a la Lcda. Inés A. Aponte Duchesne. Se le advierte a la licenciada que cualquier transgresión futura a las normas mínimas de conducta que impone el Código de Ética Profesional conllevará una sanción disciplinaria más severa.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal. La Jueza Asociada Oronoz Rodríguez está inhibida.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo